**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Case No.  10-cr-00509-REB-01

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.    SCOTT ANTHONY WHATCOTT,
    aka Michael Scott Smith,
    aka Scott Vasadi,

      Defendant.

_____

**GOVERNMENT'S RESPONSE REGARDING
DEFENDANT WHATCOTT'S MOTION SEEKING A
PRE-TRIAL DETERMINATION OF 801(d)(2)(E) MATERIAL
(Document 138)**

_____

The United States of America, by United States Attorney John F. Walsh, and

through Assistant United States Attorneys Patricia Davies and Jeremy Sibert, hereby

submits its response regarding Defendant Whatcott's Motion Seeking A Pre-Trial

Determination of 801(d)(2)(E) Material (document 138). The motion should be denied

because, for the reasons below, it is premature, and requests an unnecessary mini-trial.

**I.**    **Background of Conduct and Relevant Evidence**

    A.    <u>The Alleged Conduct</u>

The defendant, Scott Whatcott is charged in a forty-nine count indictment with

multiple schemes to defraud and make false statements to financial institutions and

other lenders, wire fraud, money laundering, aggravated identity theft, and aiding and

abetting.  (Document 1).  Co-defendant Ramona Fricosu is charged in all but one of the

bank fraud counts (Count 34), certain of the money laundering counts (Counts 19 - 26), and the aggravated identity theft counts (Counts 17 & 18).   Defendants' various fraud encompassed the following alleged conduct, recited chronologically.

Beginning in or about September 2005 and through February 2006, the defendants applied for a mortgage to purchase 9070 Christy Court in Colorado Springs ("Christy Court property").  Defendant submitted a loan application and false supporting income and asset documents to Washington Mutual for the Christy Court property mortgage.  (Counts 35 & 39).

Between January 2006 and February 2006, defendants also submitted a series of false loan applications and/or false supporting documents in connection with attempts to obtain mortgage financing for the purchase of 5473 Thresher Lane in Colorado Springs ("Thresher Lane property").  (Counts 36 - 38).  Notably, one of defendants' false submissions included false employment verification letters and earning summaries relating to defendants' employment at Bank of America.  (Count 37).

Defendants committed bank fraud beginning in April 2006 through May 2006 by making  material false misrepresentations to Bank of America, including a series of transactions whereby defendants caused credits cards issued by Bank of America in each of their names to be changed to another name (*i.e.*, Scott Whatcott's card was charged to Scott Wilson; Ramona Fricosu's card was changed to Ramona Wilson) and then false credits to be added to these credit cards for a total of approximately $330,000.  Thereafter, defendants each made purchases or cash advances by using the false positive balances on the credit cards resulting from the improper credits.

(Counts 40 - 49).

Concurrently with defendants' fraud against Bank of America (Counts 40 - 49), defendant Whatcott also engaged in further bank fraud against Wells Fargo Bank between March 2006 and September 2006.  Having successfully obtained mortgage financing for the Thresher Lane property through falsities (Counts 36 through 38), Whatcott attended the closing, at which time the Note and Deed of Trust signed by Whatcott for the mortgage disappeared.  Between June and September 2006, Whatcott transferred the Thresher Lane property to Whatcott's stepfather-in-law; caused the property to be listed for sale by his stepfather-in-law; and then sold the property to a buyer without paying off the Wells Fargo loan, and causing the $188,916 in sale proceeds to be transferred to his stepfather-in-law and then to Whatcott.

Beginning in July 2007 through September 2010, defendants undertook a series of transactions whereby they: (1) found distressed home buyers in the Colorado Springs area; (2) offered to buy the homes by obtaining a new mortgage or assuming the existing mortgage and make the home buyers' future mortgage payments; (3) convinced the home buyer to transfer the property to Whatcott or Fricosu, or to sign a power of attorney, purportedly as part of Whatcott or Fricosu assuming the mortgage or related acts; (4) would make mortgage payments to the lender for some period; (5) would initiate a quiet title action using one of their aliases (one defendant would be the plaintiff, claim to be the "sole owner" and that s/he had made diligent efforts to ascertain all interests in the property); (6) would be listed as a defendant and would disclaim all interest in the property in some transactions; (7) would file  "Returns of Service" falsely claiming that quiet title documents had been delivered to the previous

3

homeowner and/or lender; (8) would then file a motion for decree of quiet title (after

falsely claiming interest holders had been served and one defendant having filed court

documents claiming no interest); and (9) with title "quieted" in one of their names,

defendants would sell the property, obtain the proceeds and not pay the outstanding

mortgage or previous owner ("Quiet Title Scheme").  Through this Quiet Title Scheme,

between February 2008 and May 2011, defendants obtained approximately $912,039.

Counts 1 through 12 allege bank fraud transactions as to both defendants in the

Quiet Title Scheme.  Counts 13 through 16 allege wire fraud transactions as to both

defendants in the Quiet Title Scheme.  Counts 17 and 18 allege instances of

aggravated identify theft against defendant Whatcott for his use of another's social

security number in connection with Counts 4 and 9.  Counts 19 through 33 allege

money laundering, with each defendant negotiating transactions with proceeds from

bank fraud and wire fraud in the Quiet Title Scheme.

The indictment does not allege participation by any other wrong doers besides

defendants Whatcott and Fricosu.

B.    Background Regarding Evidence Potentially Admissible Under Rule

       801(d)(2)(E).

At trial, the government anticipates offering documentary and testimonial

evidence regarding defendants' alleged crimes, described above.  The documentary

evidence will include: (1) documents prepared and submitted to courts by one or more

defendants in the Quiet Title Scheme; (2) communications from one or more

defendants to distressed homeowners, lenders, realtors, title company personnel and

others in the Quiet Title Scheme; (3) records regarding accounts a defendant held with

4

financial institutions (Bank of America and others); (4) documents  prepared and

submitted by a defendant to victim lender representatives in bank fraud; (5) documents

reflecting accurate financial and employment information regarding defendants

(compared to false documents defendants submitted for mortgages); (6) documents

pertaining to cash advances, purchases or other transactions a defendant made

relevant to Bank of America fraud or money laundering; (7) items seized under search

warrant from defendant's residence, including items written by defendant Fricosu and

documents from computers; and (8) recordings of conversations between defendants

during Mr. Whatcott's incarceration.

Testimonial evidence will include testimony from witnesses to whom either

defendant made statements relevant to the crimes charged (*i.e.*, distressed home

owners, victim lender personnel, fellow Bank of America employees, personnel involved

in real estate transactions, etc.).  The government does not anticipate testimony from

anyone who conspired with defendants or was a cooperating informant for the

government.

## II.     Defendant's Motion is Premature and Should Be Denied.

As the above summary reflects, the testimonial evidence is not anticipated to

implicate Rule 801(d)(2)(E).  The documentary evidence categories reflect evidence

admissible under alternate evidentiary rules, with a few categories also admissible

under Rule 801(d)(2)(E).  However, the government cannot assess potentially

substantial evidence from defendants' computers at this time, which may be admissible

per Rule 801(d)(2)(E).  As explained to the Court in previous filings *(see e.g.*, Document

148 [Parties' Joint Status Report]): (1) the government ceased review of defendants' computers in November 2010 to avoid inadvertent exposure to attorney-client privileged materials; (2) defendants' counsel have been conducting the attorney-client privilege review since March 2011 and have not completed that review; and (3) as of the June 21st status hearing, defendant Whatcott's counsel estimated that completion of the attorney-client privilege review would require approximately another 45 days.  The government is unaware of the contents of that electronic evidence at this time but believes that it may contain additional evidence admissible under Rule 801(d)(2)(E).

Additionally, the parties are currently litigating another computer of defendant Fricosu's that is currently encrypted (document 111, etc.).  The government has not been able to review the contents of that computer either.  Depending on the outcome of that litigation, that computer, too, may become available to the government and may contain additional evidence admissible under Rule 801(d)(2)(E).

Based on the status of the computer evidence, and the circumstances that for reasons within the defendants' but not the government's control, the government cannot review the computer contents to identify evidence admissible under Rule 801(d)(2)(E) – the government submits that the instant Motion is premature.  As such, it should be denied.[1]

---

[1]The government understands that it could complete a *James* proffer as to known materials at this time followed by another *James* proffer in the future.  However, for efficient use of government resources and to avoid confusion, the government requests that it not be required to do a piecemeal and potentially incorrect proffer (*i.e.*, computer contents may provide different context to other evidence changing the Rule 801(d)(2)(E) analysis, etc.)

6

**III.     There is no requirement that the Court conduct a pre-trial *James* hearing.**

    A.     This Case Involves Limited Evidence Under Rule 801(d)(2)(E).

The government submits there is no requirement for a pre-trial hearing assessing the admissibility of co-defendants' statements made during the fraud transactions. While the government agrees that evidence may be offered under Rule 801(d)(2)(E) regarding crimes such as these, this case did not charge a conspiracy and does not involve many participants where the court might anticipate substantial evidence of this kind.  Instead, limited evidence in this case may implicate Rule 801(d)(2)(E), reducing further the need for a pre-trial ruling.

Additionally, evidence in this case will be admissible under other rules, not Rule 801(d)(2)(E).  Some statements may not fall under Rule 801(d)(2)(E) because they are not hearsay.  The conversations may not be "statements" for hearsay purposes because nothing was asserted.[2]  Further, statements are not "hearsay" if they are not offered for the truth of the matter asserted.[3]  *See United States v. Cesareo-Ayala*, 576 F.3d 1120, 1128-1130 (10th Cir. 2009).  Statements that are untrue; statements that are used to establish verbal acts; or statements that show the effect on the listener or hearer are not hearsay.  *United States v. Schmidt*, 2007 WL 1237975, * 1 (D. Colo. 2007)(J. Blackburn).  Likewise, statements that provide context and completeness to a defendant's admission are not excluded as hearsay.  *United States v. McDowell,* 918

---

[2]  A "statement" is an oral or written assertion, or nonverbal conduct intended as an assertion.  Fed. R. Evid 801(a).

[3]  "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Fed. R. Evid 801(c).

F.2d 1004, 1007 (1st Cir.1990) ("Nor can a defendant, having made admissions, keep from the jury other segments of the discussion reasonably required to place those admissions into context."); *see also United States v. Gutierrez-Chavez,* 842 F.2d 77, 81 (5th Cir.1988) (holding that statements on tape recording were admissible "for the limited purpose of putting the responses of the [defendant] in context and making them intelligible to the jury and recognizable as admissions").

If statements qualify as non-hearsay admissions under Rule 801(d)(1) or (d)(2)(A)-(D), rather than co-conspirator statements under Rule 801(d)(2)(E), they need not be included in a *James* proffer.  Similarly, even if a statement is hearsay, it may be admissible under a hearsay exception found in Rules 803 or 804.  Therefore, the statement need not be addressed here.  And "direct testimony of a conspirator ... describing his participation in the conspiracy and the actions of others is not hearsay." *United States v. Townley*, 472 F.3d 1267, 1273 (10th Cir. 2007)*, quoting United States v. Mobile Materials, Inc.,* 881 F.2d 866, 871 (10th Cir.1989).

B.    This Court May Properly Address These Issues At Trial

While a court may satisfy the prerequisites for admission of an aider/abettor statement against another by holding a *James*-type hearing, for which the Tenth Circuit expressed a preference,[4] such a hearing is not required by the Circuit.  *United States v.*

_____

[4]Other Circuits do not favor *James* hearings.  In fact, the Fifth and Eleventh Circuits (birthplace of the *James* decision) have effectively abandoned pretrial determinations of admissibility and most district courts make such determinations of admissibility at trial.  *United States v. Williams*, 264 F.3d 561 (5th Cir. 2001)(It is not an abuse of discretion to determine the requirements of FED. R. EVID. 801(d)(2)(E) without conducting a *James* hearing); *United States v. Fragoso*, 978 F.2d 896, 899 (5th Cir. 1992) (*James* has never required a hearing outside the presence of the jury.); *United States v. Barshov*, 733 F.2d 842, 850 (11th Cir. 1984) ("[[I]f the district court concludes

8

*Gonzalez-Montoya*, 161 F.3d 643, 648-49 (10th Cir. 1998).   Rather than hold a pre-trial

hearing, the court may provisionally admit a statement "with the caveat that ... the party

offering [it] must prove the existence of the predicate conspiracy through trial testimony

or other evidence."   *Id.* at 649; *United States v. Merrick*, 299 F. App'x 820, 822 (10th

Cir. 2008); *United States v. Owens*, 70 F.3d at 1118,1123 (10th Cir. 1995).   The

determination of which of these alternatives to choose resides in the discretion of the

trial court.   *United States v. Aguilera-Meza*, 329 F. App'x 825, 833 (10th Cir. 2009);

*United States v. Urena*, 27 F.3d 1487, 1491 (10th Cir. 1994).   The evidentiary content

of the hearsay statement, as well as other evidence, may be considered in making that

determination.   *See* Fed.R.Evid. 801(d)(2); *see also United States v. Bourjaily*, 483 U.S.

171, 181 (1987); *Gonzalez-Montoya*, 161 F.3d at 649.

     In assessing the admissibility of co-defendant's statements without a pre-trial

hearing, the Court can make preliminary factual findings on the record regarding the

admissibility of the statements and assess an order of proof offered by the government.

*See United States v. Perez*, 989 F.2d 1574, 1580 (10th Cir.1993) (*en banc*).   Proof that

a fraud scheme existed and that a statement was made during its existence and in

furtherance of it need be established only by a preponderance of evidence.   *See e.g.*,

---

that a *James* hearing is not reasonably practical, it can admit the statements subject to
the government later connecting them up" with sufficient evidence.); *United States v.
Hines*, 717 F.2d 1481, 1488 (4th Cir. 1983) (This court has held that a district court
need not conduct a pre-trial *James* hearing to determine admissibility.); *United States v.
Baltas*, 236 F.3d 27, 34-35 (1st Cir. 2001) (Noting that if the district court "determines it
is not reasonably practical to require a showing to be made before admitting the
evidence, [it] may admit the statement subject to being connected up.")

*Bourjaily*, 483 U.S. at 175.

      C.    Preferred Order Of Proof

      The Federal Rules of Evidence changed long-standing common law practices concerning the admission of co-conspirator statements. The determination of the admissibility of out-of-court declarations pursuant to *Federal Rules of Evidence* 801(d)(2), 803, or 804(b)(3) is a question for the trial court to decide. *United States v. Jackson*, 627 F.2d 1198, 1218 (D.C. Cir. 1980). *See also United States v. Lippner*, 676 F.2d 456, 463-464 (11th Cir. 1982).

      The order of proof on the admissibility of co-conspirator hearsay is governed by Federal Rule of Evidence 104(a):

> Preliminary questions concerning the . . . admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b). In making its determination, [the court] is not bound by the rules of evidence except those with respect to privileges.

      Rule 1101(d)(1) provides in similar fashion that the rules of evidence "do not apply" to "[t]he determination of questions of fact preliminary to admissibility of evidence . . ." Accordingly, the Government, in "proving up" statements, and the Court, in making its admissibility determinations, are not bound by the rules of evidence except those concerning privileges. The "preferred order" of proof for the admission of out-of-court statements through application of Rule 801(d)(2)(E) permits connecting up strategies, proffers, pretrial hearings or any reasonable combination of approaches.

In *Bourjaily*, 483 U.S. at 183-84, the Supreme Court held that the Constitution did not require "independent inquiry into the reliability of statements that satisfy the requirements of Rule 801(d)(2)(E)."  The Court expressly eschewed "an opinion on the proper order of proof that trial courts should follow in concluding that the preponderance standard has been satisfied in an ongoing trial."  *Id.* at 176 n.1; *accord United States v. Jeffrey*, 128 F. App'x 680, 697 (10th Cir. 2005).

Subsequent to *Bourjaily*, the Tenth Circuit clarified the meaning of the term "preferred order of proof" in *United States v. Hernandez*, 829 F.2d 988 (10th Cir. 1987). The court stated that the "preferred order of proof" simply refers to the requirement that the trial court make the requisite factual determination of the existence of a conspiracy prior to allowing coconspirator statements to be heard by the jury.  *Id.* at 994 n.6.  The court also noted "this order of proof *does not involve a right to a pretrial hearing on admissibility*, and in no way precludes the trial judge from exercising his considerable discretion and conditionally admitting the statements subject to later being connected up."  *Id.* (emphasis added); *see also United States v. Pinto*, 838 F.2d 426, 433 (10th Cir. 1988).

The Tenth Circuit has recognized that "[i]n many cases, the trial court allows co-defendants' hearsay into evidence before the requisite facts have been established in reliance upon the government's representation that such proof will be forthcoming later in the trial."  *United States v. Perez*, 989 F.2d 1574, 1582 (10th Cir. 1993) (*en banc*). Courts have consistently rejected the necessity of a "mini-trial" on the merits of the evidence either prior to trial, or even outside the presence of the jury.  *Id.*; *United States*

*v. Monaco*, 700 F.2d 577, 581 (10th Cir. 1983) (a trial court has no obligation to

determine admissibility of possible hearsay at the pretrial stage); *United States v.*

*Burger*, 773 F.Supp. 1419, 1427 (D. Kan. 1991) (court's practice is to conditionally

admit co-conspirator statements, subject to the government later connecting the co-

conspirators and their statements to the conspiracy); *United States v. Barker*, 623 F.

Supp. 823, 830 (D. Colo. 1985) ("[T]he Tenth Circuit does not require a 'mini-hearing' to

be held outside the presence of the jury.  Rather, in this circuit, the co-conspirator

statements may be conditionally admitted by the trial court.").

  Accordingly, this Court may properly exercise its discretion in determining to

direct a proffer at a later juncture and rule without a pre-trial hearing, and is particularly

justified in doing so under the circumstances of this case.  As noted, almost all of the

fraud transactions alleged in the Indictment involve both defendants.  A significant

portion of the government's evidence will be testimony of homeowners, escrow officers,

lender representatives, and title company personnel regarding statements one or both

defendants made to them.  A requested pre-trial evidentiary hearing involving their

testimony would constitute an unnecessary "min-trial."  *See, e.g., Williamson*, 53 F.3d at

1518-19; *Roberts*, 14 F.3d at 513-14.  Under the above-cited precedents, the

government submits that the defendant's motion for a pre-trial determination should be

denied as the Court will be able to make rulings during the trial on Rule 801(d)(2)(E)

statements.

## IV.    *Conclusion*

  Due to the nature of the anticipated evidence, the government submits the task

of determining admissibility will be a relatively simple one.  A pre-trial, or even during-

trial, *James*-type hearing is unnecessary for the preliminary assessment of admissibility.

WHEREFORE, the United States objects to the holding of a pre-trial *James*

hearing.  Such advance "mini-trials" are not required by law and are a waste of the

Court's time and the parties' resources.   The United States respectfully asks the Court

to deny the motion.

Respectfully submitted this 27th day of June, 2011.

JOHN F. WALSH
United States Attorney


By: s/Patricia Davies
PATRICIA DAVIES
Assistant United States Attorney
United States Attorney's Office
1225 17th Street, Suite 700
Denver, CO 80202
Phone: 303/454-0100
Fax: 303/454-0403
patricia.davies@usdoj.gov
Attorney for Government

**<u>CERTIFICATE OF SERVICE</u>**

       I hereby certify that on this 27th day of June, 2011, I electronically filed the foregoing **GOVERNMENT'S RESPONSE REGARDING DEFENDANT WHATCOTT'S MOTION SEEKING A PRE-TRIAL DETERMINATION OF 801(d)(2)(E) MATERIAL (Document 138)** with the clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

Mark Johnson
mark.johnson68@gmail.com

Philip L. Dubois
dubois@dubois.com

Tonya Andrews
Tonya.Andrews@usdoj.gov

Martha Paluch
Martha.Paluch@usdoj.gov

       By: s/ Veronica Ortiz_____
       VERONICA ORTIZ
       Legal Assistant
       1225 Seventeenth Street, Suite 700
       Denver, Colorado 80202
       Telephone: (303) 454-0100
       Facsimile: (303) 454-0406
       E-mail: Veronica.Ortiz@usdoj.gov